SEALED

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 2 6 2015

CLERK, U.S. DISTRICT COURT
By _____
Deputy

# United States District Court

**NORTHERN** _____ **DISTRICT OF** _____ **TEXAS** _____

| | |
|---|---|
| **In the Matter of the Search of** <br> (Name, address or Brief description of person, property or premises to be searched) | **APPLICATION AND AFFIDAVIT** <br> **FOR SEARCH WARRANT** |

Electronic devices that are currently located at the Social Security Administration/Office of the Inspector General/DCIU, 1301 Young Street, Suite 605, Dallas, Texas 75202, more fully described in Attachment A

**CASE NUMBER:** 3:15-MJ-782-BK

I _Cynthia M. Roberts_ **being duly sworn depose and say:**

**I am a(n)** **Special Agent with the U.S. Social Security Administration (SSA), Office of Inspector General (OIG)** and have reason to believe that on the person of or **XX** on the property or **premises known as** (name, description and/or location)

(SEE ATTACHMENT A).

in the ____**NORTHERN**____ **District of** _____**TEXAS**_____ there is now concealed a certain **person or property, namely (describe the person or property to be seized)**

(SEE ATTACHMENT B).

**which is** (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, and is, otherwise, criminally possessed, **concerning a violation of Title** ___42___ **United States code, Section(s)** ___§1383a(a)(3)___ . **The facts to support a finding of Probable Cause are as follows:**

(SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT CYNTHIA M. ROBERTS).
**Continued on the attached sheet and made a part hereof.** **XX Yes _ No**

_____
Signature of Affiant
CYNTHIA M. ROBERTS
Special Agent, SSA/OIG

**Sworn to before me, and subscribed in my presence**

_October 26, 2015_ at 10:00 a.m. at _____ **Dallas, Texas** _____
**Date and Time** **City and State**

**RENÈE HARRIS TOLIVER**
**United States Magistrate Judge** _____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Cynthia Roberts, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—

electronic devices—which are currently in law enforcement's possession, and the extraction

from that property of the electronically stored information described in Attachment B.

2.     I am a Special Agent with the U.S. Social Security Administration (SSA), Office

of Inspector General (OIG), and have been since November 2012.  I have been a Special Agent

with other federal agencies since September 1997.  The statements contained in this affidavit are

based upon my investigation, information provided by other law enforcement personnel, and on

my experience, and training as a Special Agent.

3.     This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The property to be searched is as follows:

   a.  One (1) black Alcatel TracFone, 014496005236736;

   b.  One (1) black ZTE cellular phone, model number Z667G, serial number
       9B0435221D73;

    c.   One (1) iPod;

hereinafter the "Devices."  The Devices are currently located at SSA/OIG/Cooperative Disability

Investigations Unit (CDIU) – 1301 Young Street, Suite 605, Dallas, Texas, 75202.

    5.     The applied-for warrant would authorize the forensic examination of the Devices

for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

    6.     Probable cause exists to believe that evidence, fruits, or contraband can be found

on the Devices related to an investigation that Doreen Mitchell, John Mitchell, Michael Mitchell

and Sonny Mitchell knowingly participated in a scheme to defraud the Government related to

SSA benefits in violation of 42 U.S.C. § 1383a(a)(3).   If, at any time, I make reference to an

individual named "Patrick Rena," this is truly a reference to John Mitchell, who often uses the

identity of Patrick Rena when conducting Social Security related business.

    7.     John Mitchell was issued SSN ending 1974 in January 1974.  He received two

replacement Social Security cards in 2010 under his same name.  John Mitchell provided a State

of Texas identification card during a SSA-contracted examination, which displayed his name and

address of 3750 Wayside Avenue, Fort Worth, Texas 76110.  The identification card number

was verified through the Texas Department of Public Safety; however, the identification card

number was issued to a female with a completely different name.

    8.     SSA Area Operations Analyst Troy Gardner conducted a name search in the SSA

database and was unable to locate anything for "Patrick Rena."  Patrick Rena has used SSN

ending in 1976, which was issued by the Commissioner of Social Security to K. B. in November 1992. Accordingly, the identity of Patrick Rena is a fraudulent identity.

9.      Relevant to the instant search warrant affidavit, beginning in or around 1978, Doreen Mitchell and John Mitchell made a series of representations to the SSA that caused the SSA to believe that not only was Doreen Mitchell's functioning was more limited than it truly was, but Doreen Mitchell's sons, Michael Mitchell and Sonny Mitchell, were also more functionally limited than they truly were. Based on these representations, the SSA concluded that Doreen Mitchell, Michael Mitchell and Sonny Mitchell were eligible for SSI benefits. Additionally, since February 2014, Doreen Mitchell, John Mitchell, Michael Mitchell and Sonny Mitchell have appeared at interviews and examinations and willfully misrepresented their actual levels of intelligence and functioning in order to either seek benefits or ensure their benefits would continue.

10.     In support of John Mitchell's application for Supplemental Security Income payments, Doreen Mitchell filled out an Adult Function Report for John Mitchell on December 12, 2013, claiming he was unable to go out alone, drive, socialize with strangers, count change, pay bills or handle any other financial issues. Contrary to Doreen Mitchell's assertions and John Mitchell's presentation at an interview with SSA in May 2014, John Mitchell was seen soliciting customers for on-the-spot automobile body repair on or about July 11, 2014 and August 1, 2014, and performing repair on vehicles on or about May 22, 2014; July 11, 2014; and July 27, 2014. In an interview with an SSA/OIG Special Agent on September 29, 2015, John Mitchell stated that he does auto body and fender repair for cash and earns approximately $1,000 per month. He also stated that he buys junk cars and re-sells them after he repairs them, also for cash. Based on

3

my training and experience, I know that individuals will use electronic devices to communicate with others to set-up meetings or deals. As a result, information associated with these activities is likely to be found on the Devices.

11.     Because John Mitchell has identification cards, holds bank accounts, and has obtained lines of credit using the fraudulent identity of Patrick Rena, based on my training and experience, additional documents and records associated with this identity are likely to be found on the Devices.

12.     Doreen Mitchell was scheduled for an interview at the SSA office on July 22, 2014. Prior to this interview, the CDIU conducted surveillance and confirmed that her activity level was greater than she had previously disclosed to the SSA. On July 8, 2014, she was observed taking out her trash and scrolling through her cell phone. Additionally, on July 21, 2014, Doreen Mitchell was observed walking down the street, near her home, talking on her cell phone. On or about July 21, 2015, Doreen Mitchell appeared for a consultative examination with Dr. Alicia Coleman for the purpose of determining her continued right to disability benefits. Doreen Mitchell made statements such as "I don't like to see nobody or go nowhere" and "the lady told the judge a long time ago, medication doesn't help me." When asked about a typical day, Doreen Mitchell responded, "just stay home, nothing." Doreen Mitchell frequently stated she wanted to go home and "I won't see no more judges." When asked, Doreen Mitchell did not know which city she was in, which floor of the building she was on, or the current date. In an interview with me on September 29, 2015, Doreen Mitchell stated that two of her granddaughters live with her and she cares for them on a daily basis. Based on my training and experience, I know that individuals will use electronic devices to communicate with others and document

4

activities. As a result, information associated with this communication and activities is likely to be found on the Devices.

13. During an interview with SSA, Doreen Mitchell and John Mitchell claimed Sonny Mitchell did not communicate with others and spoke only to them and his girlfriend, needed help completing simple tasks, did not drive, did not shop, could not manage money, and did not associate with anyone he did not know. Contrary to the representations made to the SSA regarding Sonny Mitchell's functioning and Sonny Mitchell's presentation at the interview, that same day, Sonny Mitchell was seen driving a pick-up truck that displayed magnetic signs advertising on the spot body repair. He was followed to a QT gas station near Doreen Mitchell's residence, where he was observed performing dent repair on a customer's vehicle. He appeared to be compensated with gasoline for his vehicle. After the job was completed, he entered the QT with a female and they purchased items. He was later observed driving through a nearby Home Depot parking lot looking for body repair work. Sonny Mitchell was also seen soliciting or performing automobile repair work on October 10, 2014; October 17, 2014; October 24, 2014; and October 28, 2014. Despite presenting as having significant mental limitations, Sonny Mitchell has also been observed using a cellular telephone. On or about July 21, 2015, Sonny Mitchell also appeared for a consultative examination with Dr. Alicia Coleman for the purpose of determining his continued right to disability benefits. When asked, he could not identify his age, birthday, the current month, date, or year, the day of the week, or the city, county, and state of the evaluation. Based on my training and experience, I know that individuals will use electronic devices to communicate with others and document activities. As a result, information associated with this communication and activities is likely to be found on the Devices.

14.     During an interview with SSA, Doreen Mitchell and John Mitchell claimed that Michael Mitchell needed help completing simple tasks, did not interact with anyone he did not know (and, in fact, spoke only to them), and had not worked since his last disability hearing in or around 2007. On January 8, 2015, Michael Mitchell was seen driving a vehicle displaying signs, which advertised on the spot body repair. On January 21, 2015, Michael Mitchell was seen driving to a QT gas station, alone, and purchasing items. He was later followed to a business where he appeared to be assisting friends or family with the purchase of a vehicle. Michael Mitchell test drove the vehicle and inspected the engine compartment as well as what appeared to be the vehicle's title. On July 21, 2015, Michael Mitchell also appeared for a consultative examination with Dr. Alicia Coleman for the purpose of determining his continued right to disability benefits and reported symptoms of anxiety around "everyone I don't know." Moreover, he could not identify his birth day, month, or year; the day of the week; or the city, county or state that he was in. Contrary to Michael Mitchell's statements and presentation during the examination, two days later, on the afternoon of July 24, 2015, Michael Mitchell had care of a child, who he took to a gas station. While there, he pumped gasoline and talked to another customer about automotive bodywork, pointing to magnetic signs on his door. Based on my training and experience, I know that individuals will use electronic devices to communicate with others and document activities. As a result, information associated with this communication and activities is likely to be found on the Devices.

15.     In an interview with me on September 29, 2015, Doreen Mitchell stated that she and her sons only had bank accounts at Bank of America. However, during searches of their residences that same day, information pertaining to accounts with First National Bank Texas and Chase Bank was found. Additionally, on July 17, 2014, Doreen Mitchell was observed entering

6

a Chase Bank by herself.   Based on my training and experience, I know that individuals use electronic devices for banking transactions.  As a result, information about bank accounts or financial transactions is likely to be found on the Devices.

16.     The Devices are currently in the lawful possession of the SSA/OIG/CDIU.  They came into the SSA/OIG/CDIU's possession following the execution of a lawfully issued search warrant.  Additionally, Michelle Mitchell, Sonny Mitchell's fiancé, consented to having her vehicle searched and items to be seized.  Therefore, while the SSA/OIG/CDIU might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

17.     The Devices are currently in storage at SSA/OIG/CDIU – 1301 Young Street, Suite 605, Dallas, Texas 75202.  In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the SSA/OIG/CDIU.

## TECHNICAL TERMS

18.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of

7

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

19.     Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and possibly PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

8

21.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual

9

information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

23.    *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Cynthia M. Roberts
Special Agent, SSA/OIG

SWORN and SUBSCRIBED to before me this 26th day of October, 2015.

RENEE HARRIS TOLIVER
United States Magistrate Judge

## ATTACHMENT A

25.     The property to be searched is:

a.  One (1) black Alcatel TracFone, 014496005236736;

b.  One (1) black ZTE cellular phone, model number Z667G, serial number
    9B0435221D73;

c.  One (1) iPod;

The Devices are currently located at SSA/OIG/CDIU – 1301 Young Street, Suite 605,
Dallas, Texas, 75202.

This warrant authorizes the forensic examination of the Devices for the purpose of
identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of

42 U.S.C. § 1383a(a)(3) and involve DOREEN MITCHELL, JOHN MITCHELL (a/k/a

PATRICK RENA), MICHAEL MITCHELL and SONNY MITCHELL since June 2013

including:

      a.  Any and all records containing or referencing personal identifiable information,
including but not limited to, names, addresses, dates of birth, Social Security
numbers, driver's license numbers, identification certificates, identification cards,
and photographs;

      b.  Any and all records containing or referencing types, amounts, and prices of auto
body repair work, as well as dates, places, and amounts of specific transactions;

      c.  Any and all records containing or referencing lists of customers and related
identifying information;

      d.  Any and all records containing or referencing other identities used (to include, but
not limited to, names, addresses, phone numbers, or any other identifying
information);

      e.  Any and all records containing or referencing employment;

      f.  Any and all records containing or referencing sources of income;

      g.  Any and all records containing or referencing bank records, checks, credit card
bills, account information, and other financial records;

h.   Any and all records containing or referencing the existence of assets;

i.   Any and all records containing or referencing monetary transactions involving SSA benefits;

j.   Any and all records containing or referencing claims for Social Security disability.

k.   Any and all records referencing social activities attended or organized by Doreen Mitchell, John Mitchell, Patrick Rena, Michael Mitchell, or Sonny Mitchell.

l.   Any and all records regarding medical treatment or a lack of medical treatment sought by Doreen Mitchell, John Mitchell, Patrick Rena, Michael Mitchell, or Sonny Mitchell.

2.   Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

2